THE STATE OF OHIO, APPELLEE AND CROSS-APPELLANT,
*v.* SCHAIM, APPELLANT AND CROSS-APPELLEE.

[Cite as *State v. Schaim* (1992), 65 Ohio St.3d 51.]

(No. 91–1351—Submitted June 3, 1992—Decided October 28, 1992.)

*H. Fred Hoefle,* for appellant and cross-appellee.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for appellee and cross-appellant.

*Dinsmore & Shohl, Kenneth S. Resnick* and *Jennifer A. Adair,* urging reversal in defendant's appeal for *amicus curiae,* Cincinnati Speech and Hearing Center.

*Harry R. Reinhart,* urging dismissal of the state's cross-appeal on behalf of *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

---

WRIGHT, J. The appellant and cross-appellant raise a number of issues for our review. The first part of the opinion discusses the issue raised by the cross-appeal, which concerns the element of force required by R.C. 2907.-02(A)(2). We agree with the court of appeals that Rhonda Schaim's testimony does not support a conviction pursuant to R.C. 2907.02(A)(2). The second part of the opinion addresses the defendant's appeal on the remaining charge against him, gross sexual imposition, and reverses that conviction and re-mands the case for a new trial because the trial court committed prejudicial error in refusing to grant the defendant's motion to sever. The third part of the opinion addresses the rights of a hearing-impaired defendant.

## I

The state urges this court to adopt the position that the defendant's alleged pattern of sexual abuse of his daughter, Rhonda, is sufficient to uphold a conviction for forcible rape even though the victim admits that the defendant did not use physical force or the threat of physical force. The state relies heavily on *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, in support of its position. We agree with the court of appeals that *State v. Eskridge* does not apply to this case and that the state did not prove the elements of forcible rape.

R.C. 2907.02(A)(2) prohibits sexual conduct where the offender "purposely compels the other person to submit by force or threat of force." R.C. 2901.01 defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." In *State v. Eskridge,* we addressed the case of a father who had vaginal intercourse with his four-year-old daughter. We recognized that coercion is inherent in the parent-child relation-

ship and that under these special circumstances "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge,* 38 Ohio St.3d at 58–59, 526 N.E.2d at 306.

*State v. Eskridge* is based solely on the recognition of the amount of control that parents have over their children, particularly young children. Every detail of a child's life is controlled by a parent, and a four-year-old child knows that disobedience will be punished, whether by corporal punishment or an alternative form of discipline. Because of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey. Under these circumstances, a minimal degree of force will satisfy the elements of forcible rape. *Id.,* paragraph one of the syllabus.

The same rationale does not apply to an adult. No matter how reprehensible the defendant's alleged conduct, a woman over the age of majority is not compelled to submit to her father in the same manner as is a four-year-old girl. She is no longer completely dependent on her parents, and is more nearly their equal in size, strength, and mental resources. Although we are aware of the devastating effects of incest on its victims, and are sympathetic to the victim whose will to resist has been overcome by a prolonged pattern of abuse, we reluctantly conclude that a pattern of incest is not always a substitute for the element of force required by R.C. 2907.02(A)(2). A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her.

In reviewing the sufficiency of the evidence, our task is to determine whether there was evidence presented which, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. We conclude that the court of appeals was correct in finding that the state did not offer sufficient evidence on the element of force. Rhonda testified that "he didn't force me" and there was no evidence offered that the defendant threatened her during the incidents in question. The prosecution did not introduce evidence that the defendant had used physical force or threatened Rhonda with physical force in the past, such that she would infer the threat of physical force based on past occurrences. In the absence of this testimony, the state did not offer sufficient evidence to convince an average

mind that the defendant committed the crime with which he had been charged beyond a reasonable doubt. We affirm the court of appeals' decision to dismiss the forcible rape convictions.[2]

## II

The defendant appeals from his conviction for the gross sexual imposition of Leisa Schaim because the evidence was insufficient as a matter of law or, alternatively, because the trial court committed a number of prejudicial errors. We hold that the evidence that the defendant committed gross sexual imposition is sufficient to support his conviction, but that his rights were prejudiced by the trial court's refusal to sever the charges for trial.

## A

The defendant was charged with gross sexual imposition for having sexual contact with a person under thirteen years of age. See former R.C. 2907.-05(A)(3), now (A)(4).[3] "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The defendant was convicted of violating this section of the Revised Code based on Leisa's testimony that on one occasion he touched her buttock underneath her underwear while he was giving her a backrub.

For purposes of evaluating whether Leisa's testimony is sufficient to support a conviction for gross sexual imposition, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The element in

---

2. The defendant also asserts that the trial court erred in allowing the admission of testimony based solely on hearsay and erred in limiting defense counsel's cross-examination of Rhonda's fiance. Both of these issues are relevant only to the rape convictions, and it is unnecessary for us to decide them given our disposition of this case.

3. R.C. 2907.05(A)(3) provided in relevant part that:
"(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following apply:
"* * *
"(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person."

dispute in this case is whether the defendant touched his daughter's buttock for the purpose of sexual arousal or gratification.[4]

We conclude that the evidence in this case is sufficient, although barely so, to support a conviction for gross sexual imposition. Leisa testified that her father was giving her a back rub, with his hand underneath her nightgown, when his hand touched her buttock underneath her underwear. The defendant does not dispute that this event occurred, but claims that this was innocent contact between a father and daughter, and was not for the purpose of sexual arousal or gratification. However, the jury also heard the testimony of the older daughter (Rhonda) that her father used back rubs as a pretense to fondle her, and could have considered this evidence to determine the probability that the defendant initiated this contact with Leisa for the purpose of sexual arousal or gratification. See Part II B, below, for a detailed discussion of the admissibility of other acts evidence in this case. Under these circumstances, we cannot say that a rational trier of fact could not conclude that the defendant committed the act with the requisite purpose.[5]

## B

The indictment included five different counts that alleged three different offenses committed against three different victims. Counts one and two charged the defendant with raping his twenty-year-old adopted daughter on two different occasions. R.C. 2907.02(A)(2) (forcible rape). Counts three and four charged the defendant with knowingly or recklessly causing offensive

---

4. R.C. 2907.05 is modeled after Section 213.4 of the Model Penal Code. The Model Penal Code defines "sexual contact" as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." 1 Model Penal Code (1980), Section 213.4. The comments to the Model Penal Code specifically note that one element of the crime is a purpose to arouse or gratify sexual desire. *Id.* at 400, Comment 2. It is "[t]he requirement of a particular purpose to arouse or gratify sexual desire [that] distinguishes sexual imposition from ordinary assault and from noncriminal touching." *Id.*

5. It is the alleged victim's testimony that casts the greatest doubt on whether the defendant committed this crime. Leisa stated that her father frequently gave her back rubs and that he had never touched her buttocks before or after that occasion, and that he moved his hand when she made a sound in protest. Leisa also testified that she received lessons at school about sexual abuse and that, in her opinion, she was not sexually abused.

That a defendant can be convicted of a third-degree felony for touching his daughter's buttock on one occasion points out the breadth of the statutorily prohibited conduct. We note that the Model Penal Code and several other state's statutes define "sexual contact" as touching another's "sexual or other intimate parts," a definition significantly narrower than R.C. 2907.01(B). 1 Model Penal Code (1980), Section 213.4; Ky.Rev.Stat.Ann. Section 510.010; Pa.C.S.A. Title 18, Section 3101. Criminal "liability for sexual misbehavior should not be based on wholly equivocal conduct," and it is difficult to imagine conduct more equivocal than that before us. 1 Model Penal Code (1980) 401, Section 213.4, fn. 11.

sexual contact with an adult employee. R.C. 2907.06(A)(1) (sexual imposition). Count five charged the defendant with having sexual contact with a child under thirteen years of age, for touching the buttocks of his daughter Leisa during a back rub. Former R.C. 2907.05(A)(3), now R.C. 2907.05(A)(4) (gross sexual imposition). The defendant moved to sever the counts into these three groups for trial, and contends that the trial court abused its discretion by denying that request.

Crim.R. 8(A) provides that "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character * * *." Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. See *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 315, 421 N.E.2d 1288, 1290; 2 LaFave & Israel, Criminal Procedure (1984) 354–355, Section 17.1. Indeed, in some circumstances, " 'the defendant may prefer the disadvantages of joinder to the harassment, delay, trauma, and expense of multiple prosecutions.' " *Id.* at 355, quoting 2 ABA Standards for Criminal Justice (2 Ed.1980) 13.14, Section 13–2.1, Commentary. While the three types of charged offenses are not the same, they are of a similar character, and are properly joined in the same indictment under Crim.R. 8(A).[6]

If similar offenses are properly joined pursuant to Crim.R. 8(A), a defendant can still move to sever the charges pursuant to Crim.R. 14 if their consolidation will prejudice his or her rights. "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14.

Defense counsel moved to sever the counts into three groups for trial because the defendant's rights would be prejudiced if the jury was permitted to simultaneously consider evidence of all three offenses. Counsel argued that the consolidated trial would result in the admission of other acts evidence that would not be admissible if each group was tried separately, and that the

6. The joinder of offenses solely because they are of a same or similar character creates a greater risk of prejudice to the defendant, while the benefits from consolidation are reduced because "unrelated offenses normally involve different times, separate locations, and distinct sets of witnesses and victims." 2 ABA Standards for Criminal Justice (2 Ed.1980) 13.13, Section 13–2.1, Commentary (criticizing joinder of similar offenses). See, also, 1 Wright, Federal Practice and Procedure (2 Ed.1982), Section 143 (criticizing joinder of similar offenses). While we recognize the problems inherent in this form of joinder, we believe that the defendant's opportunity to object pursuant to Crim.R. 14 is adequate to protect his rights, and a narrow definition of "the same or similar character" is not required.

jury might use the accumulated evidence to convict the defendant on charges that were otherwise supported only by weak evidence. After hearing detailed arguments by counsel, the court denied the motion. The defendant claims that the trial court abused its discretion by refusing to sever these counts.

To prevail on his claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus.

We begin with an analysis of whether the defendant was prejudiced by the joinder of the three different offenses at trial. When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476, 481–482; *Drew v. United States* (C.A.D.C.1964), 331 F.2d 85. If the evidence of other crimes would be admissible at separate trials, any "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further. *Drew v. United States*, 331 F.2d at 90. See *United States v. Riley* (C.A.8, 1976), 530 F.2d 767 (inquiry need not proceed further). For this reason, we first address the extent to which evidence of each of these crimes would be admissible in the other trials if the counts were severed as requested by the defendant.

The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition statute both contain subsections that

address the admissibility of evidence of other sexual activity by either the victim or the defendant.[7] The legislature has further provided that a court shall resolve the admissibility of other evidence of sexual activity in chambers "at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial." R.C. 2907.02(E); R.C. 2907.05(E).

Although the law carefully limits the admissibility of evidence regarding other sexual activity, the trial court allowed the prosecution to use joinder to avoid these limits with only a cursory determination as to the extent that this evidence would be admissible in separate trials. The court apparently decided that all of this evidence would be admissible, in a consolidated trial or separate trials, because the defendant showed a pattern of molesting women. To the contrary, the majority of this evidence would not be admissible if these trials were separated.

Linda Muncie's testimony would not have been admissible to prove that the defendant committed any of the offenses against his two daughters. The charge that he committed sexual imposition against an adult employee is sufficiently different from the charges that he raped one daughter and committed gross sexual imposition against the other that evidence of this charge would not be relevant to any material issue in those cases. See *State v. Burson* (1974), 38 Ohio St.2d 157, 159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 529 (other acts must have "such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question"). Other than the fact that all of the charges concern sexual offenses, Linda Muncie's testimony does not demonstrate a purpose or any fact relevant to the other crimes. The opposite is also true; any evidence of the alleged crimes

---

7. R.C. 2907.02(D) and 2907.05(D) both provide in relevant part:

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

R.C. 2945.59 provides that:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

See, also, Evid.R. 404.

against Leisa and Rhonda would not be admissible in a separate trial on the charge of sexual imposition involving Linda Muncie.

If the defendant had been tried separately for raping his daughter Rhonda, Leisa's testimony that he touched her during a back rub would not have been admissible. The material issue regarding the rape charges was whether the defendant had sexual intercourse with Rhonda as described in her testimony and, if so, whether he used physical force or the threat of physical force to accomplish that goal. In short, the main issue was credibility. There was no dispute that if Rhonda was telling the truth, her father was the perpetrator. Under these circumstances, identity is not a material issue in the case. Intent was also not a material issue in dispute, and even if it had been, testimony regarding touching one daughter's buttock is not relevant to prove the intent required to commit forcible rape.[8]

If the charges were severed for trial based on the different victims, the trial on the charge of gross sexual imposition involving Leisa would be the only trial where evidence of the defendant's sexual activity with another victim would be admissible. On that charge the defendant did not deny the act (touching his daughter's buttock during a backrub), but disputes that it was for the purpose of sexual gratification. On the limited issue of the defendant's purpose, Rhonda's testimony about the manner in which her father's backrubs led to sexual fondling would be relevant to prove that the defendant touched Leisa's buttock for the purpose of sexual gratification. If appropriately limited, however, this testimony would not include Rhonda's testimony concerning the remainder of her father's alleged sexual acts because the prejudicial value of the additional testimony would outweigh its probative value.[9]   R.C. 2907.05(D).

---

8. The defendant also disputes that Rhonda's testimony about her father's pattern of abuse beginning when she was ten or eleven was admissible, even to prove that he raped Rhonda. This proposition of law is without merit. R.C. 2907.02(D) does not limit evidence of the defendant's other sexual activity with the alleged victim, and this evidence is admissible so long as it is relevant to an issue other than the defendant's propensity to commit crime. In this case, the pattern of abuse was admitted under the state's theory (which we have rejected) that psychological compulsion satisfies the element of force required to commit forcible rape.

However, Leisa's testimony would not be admissible at a separate trial on the rape charges. While Rhonda's testimony about the earlier pattern of abuse that she experienced would be admissible if the state's theory about the element of force was valid, Leisa's testimony is irrelevant to prove that Rhonda was psychologically compelled to have intercourse with her father.

9. The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this

It is evident that the joinder of these counts allowed the jury to consider significant amounts of other acts evidence that would not have been admissible if the charges had been severed for trial. Instead of separate trials that carefully limited the admissibility of other acts evidence, the defendant was subjected to one trial where the jury was permitted to simultaneously consider the evidence of three different offenses. This was particularly prejudicial concerning the defendant's remaining conviction for gross sexual imposition because the evidence supporting this conviction is at best thin. Despite this fact, the state maintains that the defendant was not prejudiced by joinder because the evidence of each crime was so simple and distinct that the jury could segregate the evidence. *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247. However, the court of appeals apparently confused Rhonda and Leisa's testimony when considering the sufficiency of the state's evidence on the gross sexual imposition charge.[10] See *Drew v. United States* (C.A.D.C.1964), 331 F.2d 85 (defendant was prejudiced by joinder where the record reflected confusion as to which of the crimes was being referred to). We surely cannot maintain the fiction that a jury was

instruction when it is not requested. Even if the instruction was given, the prejudice that resulted from the joinder of these counts at trial is so great that it certainly could not have been avoided simply by reading a limiting instruction.

10. The defendant alleges that the court of appeals considered the testimony of the wrong daughter in support of the gross sexual imposition charge. The court of appeals stated that "the evidence adduced at trial supporting this charge was the testimony of the defendant's twelve-year-old daughter, Leisa, who stated that as she lay on her stomach on her bed watching television, the defendant entered her room, sat down on the edge of the bed and began to rub her back. After a while his hand migrated to her lower body and he eventually slipped his hand underneath her underwear and began to caress her buttocks." Leisa's testimony about the incident was as follows: "I'd like to have my dad give me backrubs every night before I went to sleep, and one night he just rubbed my back and he went down too far and touched my butt, but I made a noise to kind of say that I didn't like that, and he didn't do it again." She testified that she was wearing a nightgown at the time, that her father gave the backrub underneath her nightgown, and his hand touched her buttock underneath her underwear. Leisa's testimony did not include any references to watching television. The older daughter, Rhonda, testified that the defendant "would come in every—every Saturday night we would watch our two shows, which would be Love Boat and Fantasy Island, and we would lay there and watch TV. And I would be laying [*sic*] on my stomach and Eric [the defendant] would come in and sit down on my bed. He never went to my brother. He always came and sat down on my bed. And he would pretend like he was rubbing my back. And then he would start moving his hands down towards my—towards my butt and start rubbing my butt."

Based on the comparison of the two sets of testimony, the court of appeals either confused the two sets of testimony, or embellished Leisa's testimony with words like "migrated" and "caress" and background details. At any rate, the similarity between the two daughters' testimony illustrates the danger of confusion. Although portions of Rhonda's testimony would be admissible to prove the defendant's intent to commit gross sexual imposition, confusion would be less likely without all of the other evidence admitted in the consolidated trial.

capable of segregating the evidence when three judges were not. Given the highly inflammatory nature of the offenses, the similarities between portions of Leisa and Rhonda's testimony, and the fact that joinder allowed the state to circumvent the prohibition on other acts testimony, we conclude that the defendant was prejudiced by the consolidated trial. See *State v. Boscarino* (1987), 204 Conn. 714, 722–723, 529 A.2d 1260, 1265 (joinder of four sexual assaults prejudiced the defendant because of the factual similarities between the crimes and the inflammatory [violent] nature of the crimes).

The defendant must also demonstrate that he furnished the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion. *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288. In this case, there were a number of pretrial motions that required a discussion of the evidence that the state expected to introduce at trial, and a detailed discussion of the merits of the motion to sever. The court was aware of the evidence that would be introduced on each charge, and the defendant pointed out the danger of the jury using other acts evidence as evidence of criminal propensity. The court refused to sever because these crimes were committed within several years, and were all against women. The court further noted that if the allegations were true, the defendant has a "sexual addiction," and that the crimes were properly joined because the defendant demonstrated a pattern of having sex with anybody that he had control over.[11] Defense counsel had adequately pointed out the prejudice to his client from joinder, and the court abused its discretion in refusing to sever these counts, particularly when its reasons for doing so were based on the fact that committing one of these crimes shows a propensity to commit another—an inference that a jury is forbidden to draw.

Because the defendant has demonstrated that his rights were prejudiced through the court's failure to sever these charges, the defendant's conviction for gross sexual imposition is reversed and the cause is remanded to the trial court for a new trial.[12]

---

11. "Pattern" evidence refers to other acts evidence that is admissible when the defendant's scheme, plan, or system in doing an act is relevant at trial. See R.C. 2945.59; Evid.R. 404(B). Evidence of a defendant's scheme, plan, or system in doing an act can be relevant for two reasons: (1) the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, and (2) a common scheme or plan tends to prove the identity of the perpetrator. *State v. Curry* (1975), 43 Ohio St.2d 66, 72–73, 72 O.O.2d 37, 41, 330 N.E.2d 720, 725–726. Identity was not a material issue in dispute at this trial, and none of these crimes was inextricably linked to the others.

12. The defendant-appellant also raises several propositions of law concerning the prosecutor's closing argument, the defense's post-trial proffer of evidence of his good character, ineffective

## III

After the conclusion of the trial, the defendant moved for a new trial because he had been unable to hear significant portions of the testimony at trial. The defendant proffered the testimony of several experts regarding the extent of his disability. Dr. Eleanor Stromberg, Ph.D., of the Cincinnati Speech and Hearing Center, would have testified that under ideal conditions (at a distance of three feet) the defendant was capable of understanding only forty-six percent of audible speech with his hearing aid. She would have further testified that the defendant's ability to hear would have been significantly lower at trial due to the conditions existing in the courtroom, and the fact that the defendant received his hearing aid only several months before trial and was still adjusting to its use. The defendant asserts that the trial court erred in refusing to allow a post-trial evidentiary hearing as to the extent that the defendant was capable of understanding the testimony at trial.

We agree that the trial court should have granted an evidentiary hearing, given the proffer of expert testimony that the defendant was unable to understand most of the proceedings against him. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The Confrontation Clause requires that a defendant be given the opportunity to be physically present at trial, that the defendant be competent to assist in his own defense, and that the defendant understand the language of the forum. LaFave & Israel, Criminal Procedure (1985) 874, Section 23.2(c). A defendant who cannot hear is analogous to a defendant who cannot understand English, and a severely hearing-impaired defendant cannot be tried without adopting reasonable measures to accommodate his or her disability. *Ferrell v. Estelle* (C.A.5, 1978), 568 F.2d 1128, 1132 (vacated as moot due to the prisoner's death, 573 F.2d 867); *People v. Rivera* (1984), 125 Misc.2d 516, 527–528, 480 N.Y.S.2d 426, 433–434.

The Sixth Amendment requires a trial court to grant an evidentiary hearing when a defendant makes a credible claim that he or she is seriously hearing-

---

assistance of counsel, and the amendment of the indictment at trial. We have reviewed these issues and affirm the court of appeals' decision on these issues. The defendant also asserts that an earlier dependency proceeding collaterally estopped the state from criminally prosecuting the defendant. The court of appeals held that the defendant did not preserve this error because the record did not contain a copy of the judgment entry in the earlier proceeding. However, the defendant did proffer evidence of what the judgment was. Nevertheless, this proposition is without merit because no issues of fact are actually litigated and determined when a department of human services voluntarily dismisses its dependency complaint.

impaired.[13] Once a court grants an evidentiary hearing to determine the degree of the defendant's disability, it is within the trial court's discretion to decide whether the defendant requires assistance to understand the proceedings and the best means to accomplish that goal. See *People v. Branson* (1984), 131 Ill.App.3d 280, 287, 86 Ill.Dec. 526, 532, 475 N.E.2d 905, 911; *Ferrell v. Estelle* (C.A.5, 1978), 568 F.2d 1128, 1131–1133 (opinion withdrawn as moot due to the prisoner's death, 573 F.2d 867). A trial court should carefully balance the state's interests and the defendant's rights, and take reasonable steps to compensate for the defendant's disability. The judge can consider the cost of alternative measures, the extent to which a particular method will disrupt trial, the degree of the defendant's impairment, and any other relevant factors. Before this defendant is retried, the court must ascertain the extent of his disability and the need for any special measures to enhance his ability to understand the witnesses' testimony.

The judgment of the court of appeals is affirmed in part and reversed in part in accordance with this opinion. The decision to reverse the convictions and discharge the defendant as to counts 1 and 2 (forcible rape) is affirmed, and the defendant's conviction for gross sexual imposition is reversed and the cause is remanded for a new trial.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

MOYER, C.J., SWEENEY, H. BROWN and BRYANT, JJ., concur.

HOLMES, J., concurs separately.

DOUGLAS, J., dissents.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring. I concur in the syllabus, the judgment, and most of the majority opinion. However, in the retrial of this defendant on the charge of gross sexual imposition involving Leisa, I would not limit the testimony of Rhonda as to any aspect of the sexual acts perpetrated upon her by this defendant.

---

13. Every attempt should be made to address the issue of a defendant's hearing disability before trial in order to protect the defendant's rights and conserve judicial resources. Ideally, defense counsel should request a pretrial evidentiary hearing on the need for special measures to assist his client.