OPINION
Defendant-appellant, Keith R. Massey, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of three counts of burglary in violation of R.C. 2911.12, three counts of theft in violation of R.C. 2913.02, and two counts of receiving stolen property in violation of R.C. 2913.51. Defendant assigns the following errors:
 I. THE TRIAL COURT DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY CONSOLIDATING THE FOUR SEPARATE INDICTMENTS FOR TRIAL.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY INSTRUCTING THE JURY THAT IT WAS PERMITTED TO CONSIDER OTHER ACTS EVIDENCE IN A CONSOLIDATED TRIAL OF FOUR SEPARATE INDICTMENTS FOR PURPOSES OF DETERMINING IDENTITY.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY REFUSING TO ADOPT APPELLANT'S PROPOSED JURY INSTRUCTIONS REGARDING THE PROPER CONSIDERATION OF OTHER ACTS EVIDENCE.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE CONSTITUTION OF THE STATE OF OHIO WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AS THE WARRANT AFFIDAVIT WAS FACIALLY INVALID AND LACKED PROBABLE CAUSE.
 V. THE TRIAL COURT DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY DENYING APPELLANT'S REQUEST FOR A MISTRIAL AFTER THE JURY WAS PERMITTED TO HEAR INADMISSIBLE CHARACTER EVIDENCE OF APPELLANT'S "OTHER ACTS" RELATING TO UNCHARGED BURGLARIES.
 VI. THE TRIAL COURT DEPRIVED APPELLANT OF HIS RIGHT OF CONFRONTATION AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY PERMITTING INADMISSIBLE HEARSAY EVIDENCE TO ESTABLISH VALUE OF STOLEN PROPERTY.
 VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY ENTERING VERDICTS OF GUILTY, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT.
Defendant's appeal arises from the trial of thirteen counts filed in four separate indictments that were joined at trial pursuant to Crim.R. 8(A).
 The Limited
On December 21, 1998, between the hours of 6:00 a.m. and 8:00 a.m., the senior security officer at The Limited observed an individual enter the office building without carrying items and leave a short time later with three shoulder bags. In response, the security officer called the operations center and advised its employees to follow the individual while he remained on The Limited's campus. When the individual was seen heading to the parking lot, the security officer instructed the operations center to ask the exit gate attendant to make note of the license plate number. Shortly thereafter, the gate attendant observed a car pulling out of the parking lot; it was an individual that fit the description provided by the operations center, and the gate attendant took down the license plate number.
Two Limited employees called the security manager's office at approximately 8:00 a.m. that morning to report that their laptop computers were missing. The police were notified, a report was filed, and the police were given the license plate number that the exit gate attendant recorded earlier in the day. The ensuing investigation led the police to the hotel residence of defendant. Ultimately, a search warrant was issued for defendant's residence and the police recovered a laptop computer and two computer carrying cases. The laptop's serial number matched the serial number of one of the laptops that was stolen from The Limited.
 Lucent Technologies
On February, 27, 1999, a Lucent Technologies security specialist, on routine patrol of the grounds, encountered two computers on a sidewalk in the rain at 9:30 p.m. The security specialist approached the area on foot and then observed two individuals, about thirty feet away from him, passing computers through Lucent Technologies' security fence. He yelled to the two individuals and they fled the scene. He chased them, but the individuals got into a car and drove away. The time of day, the distance, and the weather conditions prevented the security specialist from getting a good look at the individuals; he also was unable to get a license plate number because the car drove away without turning on its lights. To preserve any fingerprints, the security specialist donned rubber gloves and carried the computers back to the control center. The security specialist then viewed the videotapes of the company's surveillance cameras, from which a still photograph was produced. The police conducted an investigation of the incident and found two fingerprints on the computers. The prints matched defendant's fingerprints.
 Bank One
On March 3, 1999, a Bank One employee observed an individual that he later identified as defendant place a laptop computer into a carrying case. The employee confronted defendant who stated he was a Bank One employee. After approximately fifteen minutes, defendant was able to convince the employee that he was employed by Bank One. Shortly after, the employee learned that a co-worker's computer was missing from a workstation in the same area that the employee noticed defendant. On that same day, another employee reported his palm pilot was missing.
The police came in contact with defendant regarding the Bank One incident by responding to an unrelated call. The hotel where defendant resided called the police for help in removing defendant from the premises. When the police arrived, they noticed defendant's room had several pieces of computer equipment and defendant was wearing a Bank One tee shirt. Based on that information, a warrant was issued. A palm pilot, with a serial number that matched the Bank One employee's stolen palm pilot, was found in defendant's possession.
 Grange Insurance
On April 28, 1999, a security worker at Grange Insurance became aware of an intruder in the building. Although the security guard followed the individual and eventually tried to speak with him, the intruder left the building and entered a van. The security officer unsuccessfully attempted to stop the van. When the security guard proceeded back to the building, he noticed a few leather bags in the area the intruder had just fled. Inside the leather bags he found several computers, computer equipment, camera equipment, and a boom box. Two other Grange employees witnessed the intruder and observed him standing next to several bags full of electronic equipment. The security guard and the other two employees each identified defendant from a photo array as the intruder.
ASSIGNMENTS OF ERROR I II:
Defendant's first assignment of error contends the trial court erred in joining four separate indictments for trial. Initially, defendant asserts the cases did not qualify for joinder under Crim.R. 8(A). Next, defendant contends that even if the cases did satisfy Crim.R. 8(A), the cases required severance pursuant to Crim.R. 14 due to the prejudice caused by the joinder.
 Joinder
Pursuant to Crim.R. 13, the "court may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment * * *. The procedure shall be the same as if the prosecution were under such single indictment * * *." Crim.R. 8(A), in turn, provides that "[t]wo or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged are of the same or similar character." "Joinder is liberally permitted to conserve judicial resources, reduce the risk of incongruous results in successive trials, and diminish inconvenience to the witnesses." State v. Schaim (1992), 65 Ohio St.3d 51,58. Here, defendant was charged with thirteen separate offenses arising from four different instances: all were burglary, theft, or receiving stolen property. The property taken or received in each of the charged offenses was computer equipment. All four crimes occurred at businesses and the method used by defendant in each of the instances is similar. The offenses charged are of similar character and were properly joined pursuant to Crim.R. 8(A).
Relying on Schaim, defendant suggests that joinder because of "the same or similar character" creates a greater risk of prejudice. His argument is answered by addressing the resulting prejudice, not the initial joinder. After acknowledging the possible prejudices associated with joinder solely on the ground of "same or similar character," the Supreme Court in Schaim concluded "that the defendant's opportunity to object pursuant to Crim.R. 14 is adequate to protect his rights, and a narrow definition of `the same or similar character' is not required." Schaim,supra, at 58, n. 6.
 Severance
"If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts." Crim.R. 14. To show error in joining the four separate indictments for trial, defendant has the burden of demonstrating three facts: "(1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." Schaim, supra, at 59, citing State v. Torres
(1981), 66 Ohio St.2d 340, syllabus.
Defendant contends he was prejudiced by the joinder in three ways. Defendant first contends the joinder of offenses prevented him from testifying: although he would possibly have liked to testify in one of the cases, joinder forced him to testify in all or none. A defendant seeking severance for such reasons "must make a convincing showing that he has important testimony to give concerning one cause, and a strong need to refrain from testifying in the other" before prejudice will be found. State v. Roberts (1980), 62 Ohio St.2d 170, 176. Here, although defendant indicated at one point that "he would, I believe, be desirous of testifying in one of the cases but not in, certainly, three of the others," the statement falls short of satisfying Roberts. (Tr. 6.)
Defendant next contends that "spill-over" evidence impermissibly influenced the jury, thereby prejudicing him. Specifically, centering on the issue of identity, defendant claims the consolidated trials rendered his mistaken identity defense worthless.
"Weighing the danger of confusion and undue cumulative inference is a matter for the trial judge within his sound discretion. His denial of severance is not grounds for reversal unless clear prejudice and abuse of discretion is shown." Johnson v. United States (C.A. 8, 1966),356 F.2d 680. Defendant has not pointed to any evidence of actual prejudice, and may not prevail by presuming prejudice based on the number of counts. Defendant has failed to suggest how he likely would have been acquitted on some counts had the four incidents been tried separately, and thus has not satisfied the first prong of Torres.
Lastly, defendant contends he was prejudiced because the joinder allowed the jury to hear inadmissible "other acts" evidence that related to the separate cases. In analyzing defendant's argument, we "must determine (1) whether evidence of other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." Schaim, at 59. If the evidence would be admissible in separate trials, then the inquiry need not proceed further, as any resulting prejudice would not be attributable to the joinder. See Id. The admissibility of other-acts evidence is carefully limited. The use of other-acts evidence creates the danger that the jury will convict a defendant "solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." Id; see, also, State v. Curry (1975), 43 Ohio St.2d 66, 68. Nonetheless, other-acts evidence may be admitted if the evidence pertains to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). The state relies on identity to support the admissibility of "other acts" here.
For other-acts evidence to be admissible to prove identity, the "other-acts evidence must be related to and share common features with the crime in question." State v. Lowe (1994), 69 Ohio St.3d 527, paragraph one of the syllabus. Evidence of other acts is admissible if there is "substantial proof that the
In State v. Broom (1988), 40 Ohio St.3d 277, the Supreme Court of Ohio upheld the admission of other-acts evidence that related to uncharged but similar conduct. The court stated that the two uncharged "other acts" shared a "temporal, modal, and situational relationship with the acts constituting the crime charged." Id. at 282, quoting State v. Burson
(1974), 38 Ohio St.2d 157, 159. In Broom, the defendant was charged with kidnapping, rape and murder. The other-acts evidence consisted of the attempted kidnapping of two other individuals. All three incidents, the charged crime and the two other acts, occurred within "a few months of each other, within a few miles of each other, and all involved girls between the ages of eleven and fourteen walking on the street after dark." Id. In each instance "a lone driver in a car passed the victims, parked the car and then attacked them from behind, trying to get the victims into the car while using the same scurrilous language." Id. "Two of the incidents involved the same car and a knife." Id. The court also noted that the defendant in Broom was "positively identified either in a lineup or a showup and in the courtroom by both of the victims and numerous witnesses to those two incidents." Id. at 281. Moreover, the "jury was given a carefully drafted limiting instruction to explain that the evidence concerning those two incidents was admitted only for the purpose of considering whether those acts tended to show" one of the enumerated exceptions to the general prohibition on other-acts evidence.Id.
Similarly, all four of the cases at issue share a temporal, modal, and situational relationship. All four incidents occurred within a few months of each other and involved the theft of computers and/or computer equipment. The victim in each case was a business, and defendant's method of accomplishing the theft was comparable in most of the cases.Moreover, witnesses to three of the crimes identified defendant as the perpetrator, and in the fourth case, the perpetrator was caught on film that was played for the jury. Defendant's fingerprints were found on evidence in yet another case, and stolen property from two of the crimes was recovered from defendant's possession. Finally, like Broom, the jury here was given a carefully drafted instruction concerning the use of other-acts evidence.
Not only did substantial evidence suggest defendant committed the other acts, but those other acts are "related to and share common features" with each other. Lowe, supra, paragraph one of the syllabus. Because the evidence of other acts would have been admissible if the cases had been tried separately, defendant suffered no prejudice by the trial court's refusing defendant separate trials. Defendant's first assignment of error is overruled.
Defendant's second assignment of error contends the trial court erred in instructing the jury it could consider other-acts evidence for purposes of identity. As discussed under the first assignment of error, the four indictments were properly consolidated, in effect rendering other-acts evidence admissible. Defendant's second assignment of error is overruled.
ASSIGNMENT OF ERROR III:
Defendant's third assignment of error asserts the trial court erred in failing to adopt his proposed jury instruction on the proper consideration of other-acts evidence, contending the trial court's instruction on other-acts evidence was too broad. Defendant objected to the instruction the trial court proposed and offered the following fromLowe: In order to constitute a scheme so as to establish identity the other acts must involve a unique identifiable plan of criminal activity so as to establish a modus operandi or a behavioral fingerprint.
The trial court properly refused defendant's proposed instruction. The jury instruction was not appropriate because it states a legal standard developed to assist courts in determining whether to admit other-acts evidence. Lowe, at 531. As the trial court properly concluded, it was not intended to be a standard for a jury to apply to their evaluation of that evidence. Defendant's third assignment of error is overruled.
ASSIGNMENT OF ERROR IV:
Defendant's fourth assignment of error asserts the trial court violated his constitutional rights by failing to suppress evidence seized pursuant to a search warrant that was invalid for lack of probable cause. TheFourth Amendment to the United States Constitution prevents the issuance of warrants without probable cause supported by oath or affirmation. In reviewing the magistrate's decision to issue a search warrant, this court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." State v. George
(1989), 45 Ohio St.3d 325, paragraph two of the syllabus. Appellate courts afford great deference to the magistrate's determination of probable cause, "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id.
When confronted with an affidavit submitted in support of a search warrant, "the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at paragraph one of the syllabus, quoting Illinoisv. Gates (1983), 462 U.S. 213, 238-239. In this case, the affidavit stated that on March 12, 1999, Keith R. Massey was identified as a suspect in the theft of laptop computers. On March 13, 1999, while responding to an unrelated call, Officer Edbrooks observed, in plain view, a laptop computer and other computer accessories in defendant's possession. Edbrooks' statements about finding the stolen equipment in defendant's room were the only hearsay statements in the affidavit, but (1) they were premised on Edbrooks' personal observations, and (2) Edbrooks' veracity was not challenged. The foregoing provided the magistrate with a crime, as well as an identified perpetrator in whose possession the stolen items likely were found. Those facts gave the magistrate a substantial basis for concluding that probable cause existed. Defendant's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR V:
Defendant's fifth assignment of error asserts the trial court erred in denying his request for a mistrial after the jury heard inadmissible character evidence from three witnesses who referred to uncharged criminal acts. Defendant did not object to two of these statements; they thus are reviewed for plain error. Crim.R. 52(B). Because defendant objected to the third statement, it is reviewed for evidence that defendant suffered "material prejudice." State v. Sage (1987),31 Ohio St.3d 173, 182.
"Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91. To prevail under the plain error standard defendant must show that "but for the error, the outcome of the trial clearly would have been different." State v.Underwood (1983), 3 Ohio St.3d 12.
The first statement came when the prosecution asked Detective Breyer of the Columbus Police Department if he had "been involved with the investigation of many burglaries in the north end and in a five or six month period." (Tr. 158.) Breyer answered "yes." (Id.) Noting that the detective ultimately testified his investigation led him to defendant, defendant contends Breyer's ensuing testimony suggested Breyer was certain defendant committed the uncharged crimes. Immediately following Breyer's testimony, however, the prosecution limited the scope of Breyer's testimony, stating "but just for today, let's talk about the Limited situation." (Id.) From that line of questioning, the detective stated his investigation led him to defendant. Even if the challenged testimony was erroneously admitted, the outcome of the trial would not clearly have been different in its absence: any confusion was so minimal as to have no effect on the outcome of the trial.
The second statement came when John Myers, the security supervisor at Lucent Technologies, testified that "we had been having a number of computers stolen throughout the past year and had done a number of measures, not only to discover who, but to force them into a certain area." (Tr. 191.) Myers also testified that he "had locked off previous places that we discovered as a weak point in order to funnel whoever was doing this to this camera. And that camera picked up that person carrying computers out of the building." (Tr. 192.) Defendant again contends Myers' testimony implied defendant committed the past burglaries at Lucent Technologies. Arguably, the camera pick-up testimony was directed only to the crimes with which defendant was charged at Lucent Technologies, and served only to explain why the camera was set to function as it did. To the extent the evidence was erroneously admitted, however, defendant again has failed to demonstrate that but for this testimony the outcome of the trial clearly would have been different.
The third statement came when Officer Edbrooks testified that while he was in defendant's motel residence he noticed a mouse pad with a Safe Light Auto Company logo. Edbrooks further testified he was aware that "Bank One had had a burglary where numerous lap tops had been taken, as had Safe Light Auto." (Tr. 292.) Defense counsel objected and moved for a mistrial. The trial court sustained the objection, overruled the motion for a mistrial, and then admonished the jury to disregard "the statement made by the officer with regard to the burglary at Safe Light Company." (Tr. 293.)
It is within the sound discretion of the trial court to grant or deny a motion for a mistrial. State v. Garner (1995), 74 Ohio St.3d 49, 59. In the absence of evidence to the contrary, the jury is presumed to have followed the judge's cautionary instruction. State v. Dooley (Sept. 17, 1991), Franklin App. No. 91AP-303, unreported. While the statement regarding Safe Light Auto was irrelevant and potentially harmful, the trial court cannot be deemed to have abused its discretion in refusing the mistrial. Evidence of other possible uncharged crimes had been admitted through Breyer and Myers; the third incident caused no appreciable further prejudice to defendant. Defendant's fifth assignment of error is overruled.
ASSIGNMENT OF ERROR VI:
Defendant's sixth assignment of error asserts the trial court erred in allowing inadmissible hearsay evidence to establish the value of the computers stolen from The Limited. Specifically, the trial court allowed the prosecution to introduce a purchase order through the testimony of Steve Shepherd, a Security Manager for The Limited.
Shepherd testified that the police requested a valuation of the stolen computers, which prompted Shepherd to ask the Information Technology help desk for a copy of the purchase order. When Shepherd was asked at trial to state the value of the stolen computers, defendant objected and the court overruled the objection. Shepherd answered that the "winbook lap top was $3,575 and the dell lap top was $2,500." (Tr. 118.) Ultimately, the purchase order was admitted into evidence as state's Exhibit 13.
Hearsay is a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A "statement" is an "oral or written assertion." Evid.R. 801(A)(1). The hearsay rule prohibits the admission of hearsay evidence unless one of the enumerated exceptions is satisfied. Evid.R. 802. The purchase order is hearsay. To be admissible, the purchase order must satisfy one of the exceptions to the hearsay rule.
The pertinent exception here is the business records exception, which allows the admission of hearsay if the evidence is a business record "kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as provided by Rule 901(B)(10)." Evid.R. 803(6).
Without question, Sheppard was not the custodian of the records. Similarly, Sheppard's testimony did not establish that he was a qualified witness. A proper foundation witness is able to testify that (1) "the record in question was prepared by an employee of the business in question who had a duty to report the information," (2) "the person preparing the record or contributing the information to the record had personal knowledge of the facts or events reported, and that the report was prepared at or near the time of the event that is recorded," and (3) "it is the regular practice or custom of the business in question to make and retain the type of record involved." Weissenberger's Ohio Evidence 2000 Courtroom Manual (1999) Chapter 803, at 356. Sheppard did not testify to any of that information. Consequently, he is not a qualified witness as that term is used in Evid.R. 803(6).
Nonetheless, the purchase order may be admitted pursuant to Evid.R. 803(6) if the requisite information was conveyed as provided in Evid.R. 901(B)(10), which provides the business record is admissible if it satisfies "any method of authentication or identification provided by statute enacted by the general assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court." Although the state argues the purchase order satisfies the rule, the only statute that appears to apply is R.C. 2317.40. That statute, however, requires a method of authentication similar to the requirements of Evid.R. 803(6). Because Sheppard did not satisfy that standard, the trial court erred in admitting the purchase order.
The state nonetheless contends that even if the evidence was improperly admitted, it was harmless because the jury could infer that the computers cost between $500 and $5,000. Value, as used in R.C. 2913.02 and 2913.51, is determined in accordance with R.C. 2913.61. State v. Corley
(Apr. 26, 1999), Stark App. No 1998CA00169, unreported. The statute offers examples, without limitation, of the evidence that may be used "to establish the value of property in a theft offense." R.C. 2913.61(E). The section itself undermines the state's claim that no evidence is needed to establish the value of property in a theft case. Moreover, none of the examples in that section can be interpreted to support the conclusion that the property is itself evidence of its value. Some evidence of value, albeit minimal, must be presented to the jury to establish value. See State v. Corley, supra; State v. Fortson (Dec. 22, 1995), Portage App No. 95-P-0014, unreported; State v. Cook (Sept. 18, 1987), Preble App. No. CA87-04-009, unreported; State v. Grundstein (1943), 46 Ohio Law Abs. 175, 69 N.E.2d 418.
As a result of the state's failure to introduce admissible evidence on the issue of value, defendant's fifth-degree felony theft and receiving stolen property convictions arising from The Limited must be reduced to first-degree misdemeanors. Defendant's sixth assignment of error is sustained.
ASSIGNMENT OF ERROR VII:
Defendant's seventh assignment of error asserts the verdict is not supported by sufficient evidence. In addressing the assigned error, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
Initially, defendant contends the state presented insufficient evidence on the burglary, theft, and receiving stolen property charges arising out of The Limited.
Burglary requires proof that defendant trespassed into an occupied structure by way of force, stealth, or deception. R.C. 2911.12(A)(1). Defendant alleges the state failed to prove either trespass or force, stealth, or deception. R.C. 2911.21(A)(1) defines criminal trespass and prohibits a person, without privilege to do so, from knowingly entering or remaining on the land or premises of another. The trial court defined "deception" as "knowingly deceiving or causing another to be deceived by any false or misleading representation or by any other conduct, act, or omission which creates, confirms or perpetuates a false impression in another." The definition conforms with the statutory definition of deception in R.C. 2913.01(A), and applies to R.C. Chapter 2911, which does not contain a separate definition of deception. See, e.g., State v.Clement (Dec. 30, 1988), Franklin App. No. 87AP-900, unreported.
The state's evidence showed that defendant entered The Limited office building sometime between 6:00 a.m. and 8:00 a.m. Defendant was well-dressed and he came in with a group of employees that was reporting for work. Specifically, the security guard testified that several employees were entering the building "in front of him and a few that came in right after him." (Tr. 98.) Construed in the state's favor, the evidence shows that defendant knowingly entered the building without permission to do so and accomplished the trespass through deception by perpetuating the false impression that he was an employee of The Limited.
Defendant next contends the state presented insufficient evidence to sustain his convictions of theft and receiving stolen property. Defendant's argument is based on the state's failure to offer evidence of the value of the property. Because no admissible evidence of value was introduced at trial, both convictions are reduced to first-degree misdemeanors, as noted in resolving defendant's sixth assignment of error.
Defendant also asserts the evidence was insufficient to sustain his burglary conviction arising from Lucent Technologies, again contending the state did not provide any evidence of force, stealth or deception. The trial court properly defined stealth as "any secret, sly, or clandestine act to commit a trespass." (Tr. 542.)
According to the state's evidence, a security specialist patrolling the grounds of Lucent Technologies on February 27, 1999, noticed some computers lying on a sidewalk inside the fence line. On closer investigation he noticed two men, one man on each side of the fence line, passing a computer through the fence. A security camera captured the theft on tape and the jury was able to view that tape. Those facts alone, construed in the state's favor, are enough to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant trespassed in a secret, sly and clandestine manner.
With respect to the incident at Bank One, defendant alleges the evidence was insufficient to sustain his first-degree misdemeanor conviction for receiving a stolen palm pilot because the state did not offer any evidence defendant knew or should have known that the palm pilot was stolen. A misdemeanor charge pursuant to R.C. 2913.51 requires the state to prove defendant either knew or had "reasonable cause to believe that the property had been obtained through commission of a theft offense." R.C. 2913.51(A).
According to the state's evidence, a Bank One employee witnessed defendant place a computer into a bag on March 3, 1999. The employee confronted defendant concerning his activities in the building and defendant claimed to be an employee. A computer and a palm pilot were later discovered to have been stolen from the premises. A palm pilot matching the serial number of the stolen palm pilot was discovered in defendant's possession. The employee also positively identified defendant from a photo array. Construed in the state's favor, the evidence shows that defendant participated in the criminal act which resulted in computer theft. Because the palm pilot was discovered missing at the same time, the evidence suggests it, too, was stolen at the same time. Even if defendant did not commit the theft, he nonetheless would have known of its theft.
Finally, with respect to the Grange Insurance case, defendant asserts the evidence was insufficient to prove theft because the state failed to show what items were stolen, the value of those items, or that defendant stole those items. A prosecution for theft under R.C. 2913.02 requires the state to prove that defendant, with the purpose to deprive the owner of property, knowingly obtained control over the property without the consent of the owner.
According to the state's evidence, on April 28, 1999, a security worker, who later picked defendant out of a photo array, observed defendant in the catwalk of the Grange Insurance office building. Defendant left the building through the parking garage after answering a few questions posed by the security guard. Although the security guard attempted to stop the van defendant drove, the van sped up and the guard had to jump out of the way. Proceeding back the way he came, the guard discovered ten to twenty laptop computers, some camera equipment, and a large boom box all stuffed inside a leather bag. Two other Grange Insurance employees also observed defendant inside the building on that night, and identified defendant both in photo arrays and in court. They testified they observed defendant inside the building standing next to several bags full of office electronic equipment. Construed in the state's favor, the evidence places defendant with the stolen goods, and has him leaving under circumstances suggesting guilt. Accordingly, it is sufficient to prove theft. For the foregoing reasons, defendant's seventh assignment of error is overruled.
Having overruled defendant's first, second, third, fourth, fifth, and seventh assignments of error, but having sustained defendant's sixth assignment of error to the extent indicated, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
 ___________________ BRYANT, J.
TYACK and PETREE, JJ., concur.