OPINION
{¶ 1} Defendant-appellant Christopher Stragisher appeals from his convictions and sentences entered by the Columbiana County Common Pleas Court. Appellant raises eight assignments of error dealing with character evidence, comments on his silence after Miranda warnings, ineffective assistance of counsel, leading questions, hearsay, non-expert testimony, jury instructions, sufficiency of the evidence, cumulative error, and sentencing. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} The police were called to an apartment in Salem, Ohio just after midnight on February 3, 2002. Appellant shared this two bedroom apartment with a Kristen Berg. She and her boyfriend, Chad Paynter, had entered the apartment to retrieve clothes as she did not wish to stay there since appellant was upset with her. An altercation ensued, during which appellant armed himself with a kitchen knife said to have a nine-inch blade. Ms. Berg dialed 911. During this call, appellant could be heard threatening, "I'll cut [or gut] you like a fucking fish, you son of bitch." State's Exhibit Number Seven.
 {¶ 3} Ms. Berg and Mr. Paynter testified that appellant was trying to stab Mr. Paynter in the mid-section. Appellant testified that he had asked Mr. Paynter to leave, that he felt threatened, that Mr. Paynter gained entrance after he tried to lock him out, and that he armed himself with a knife only to defend himself and to lead Mr. Paynter out of the apartment. Mr. Paynter grabbed the knife and bent the blade. Appellant suffered two cuts on his hand. Mr. Paynter suffered four cuts on his hand, and required three stitches to a laceration that was bleeding heavily. (Tr. 136-137). Mr. Paynter also had a scratch on his face and scratches on his neck. (Tr. 136).
 {¶ 4} In the cruiser on the way to the station, appellant advised the arresting officer that he "should have killed the fucking asshole Paynter." (Tr. 213). At the station, appellant continued swearing about the situation and at the officer. The officer noted that after he was told to stop swearing in front of the woman working dispatch, appellant, stated, "Fuck that lady. I don't have to be quiet." He then started using his shoulders to push at his two escorting officers. (Tr. 215). Suddenly, appellant turned and kicked the arresting officer in the right shin with his pointed cowboy boot, causing a bruise. (Tr. 216).
 {¶ 5} On February 28, 2002, appellant was indicted for felonious assault, a second degree felony in violation of R.C. 2903.11(A)(2), which entails knowingly causing or attempting to cause physical harm to Mr. Paynter by means of a deadly weapon. He was also indicted for assault on a police officer, a fourth degree felony in violation of R.C. 2903.13(A), which entails knowingly causing or attempting to cause physical harm to a police officer in the performance of his official duties. On August 21, 2002, a jury found appellant guilty as charged.
 {¶ 6} On January 24, 2003, the court imposed consecutive sentences of three years for the felonious assault and one year for the assault on a police officer. The sentencing entry was journalized on January 28, 2003, and appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} Appellant sets forth eight assignments of error, the first of which provides:
 {¶ 8} "Appellant was prejudiced by the introduction of character evidence which was not relevant and which was inadmissible."
 {¶ 9} Appellant sets forth approximately six different complaints under this assignment. First, he complains that Ms. Berg twice advised the jury that appellant had been in jail for a prior offense. On direct examination, the state was establishing how Ms. Berg came to be living with appellant. She advised that initially she was subleasing his one bedroom apartment while he was away, and they later moved into a two bedroom apartment. (Tr. 26). It was only on cross-examination, where it appeared defense counsel was attempting to attack her testimony regarding appellant's presence in the one bedroom apartment and show more than a roommate relationship, that Ms. Berg advised:
 {¶ 10} "A. It was — it may have been June. I don't know. When he went to jail, that's when I moved in.
 {¶ 11} "Q. Were you married at that time?
 {¶ 12} "A. Yes.
 {¶ 13} "Q. All right. And did you and Chris both occupy this apartment?
 {¶ 14} "A. Not when I lived there. He was in jail at the time I was occupying his apartment." (Tr. 61).
 {¶ 15} Defense counsel then approached the bench, and an off the record discussion was held. Thereafter, counsel continued his questioning on their level of intimacy. Initially, we note that Ms. Berg's statements about appellant being in jail do not actually constitute testimony on a prior conviction as appellant argues. One can be in jail without ever being convicted. Further, he was the one who revealed that he had a prior driving under the influence conviction. (Tr. 242). Still, the statements constitute excludable other acts evidence.
 {¶ 16} Nevertheless, appellant opened the door to this line of testimony. Thus, we are left only with issues of plain error and ineffective assistance of counsel (which appellant also mentions under his third assignment of error outlining various allegations of ineffective assistance).
 {¶ 17} The plain error doctrine is a discretionary doctrine to be used by the appellate court only in exceptional circumstance to avoid a manifest miscarriage of justice. Statev. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121, at ¶ 39. Such circumstances do not exist regarding this argument. The court did not have a per se duty to intervene when defense counsel elicited negative information from the state's witness.
 {¶ 18} Ineffective assistance of counsel requires the defendant to establish deficient performance which caused such a serious error that the defense was prejudiced in such a way that there exists a reasonable probability that but for the error, the outcome of the trial would have been different. Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136, 142. We do not use hindsight to judge instances of trial strategy that backfire. State v. Carter
(1995), 72 Ohio St.3d 545, 558. There is a wide range of professional competence and of appropriate trial tactics. Id.
 {¶ 19} Here, counsel was attempting to establish more than a roommate relationship between the victim's girlfriend and appellant. Counsel was not deficient for failing to anticipate that Ms. Berg would answer in the manner she did. This is especially true since appellant himself advised that he was on house arrest and confined in the apartment with Ms. Berg, not in jail as she claimed. (Tr. 242).
 {¶ 20} Although he could have moved to strike her statements and although it seems he considered that strategy during the bench conference, he may have concluded that it was best to avoid drawing further attention to the issue. Moreover, from later attempts to clarify the record, it appears that counsel moved for a mistrial at the bench conference but was denied his request. (Tr. 143-144). Counsel's performance in this instance did not constitute ineffective assistance.
 {¶ 21} Second, appellant complains that Ms. Berg stated that appellant had been driving without a license for a long time. However, Ms. Berg did not state that appellant had been driving without a license, which would be a crime. Rather, when the prosecutor asked her about the nature of her relationship with appellant, she gave examples of how they helped each other, explaining, "Christopher didn't have his driver's license for a long period of time and I helped him out getting him places he needed to go." (Tr. 27). As such, appellant's argument mischaracterizes the testimony, and fails to show prejudice.
 {¶ 22} Third, appellant complains that Ms. Berg twice mentioned appellant's incarceration on the current crimes. Counsel asked Ms. Berg if she was afraid of appellant the day after the incident, and Ms. Berg responded, "No. He was in jail." (Tr. 91). Counsel also asked if she was afraid of appellant when she wrote him a letter, also the day after the incident, and she said, "I wasn't necessarily afraid of him; I knew he was in jail." (Tr. 91-92). Once again, this testimony was elicited on cross-examination by appellant's counsel. Thus, only plain error or ineffective assistance of counsel could apply. The jury knew appellant was arrested and charged with felonious assault and assault on a police officer. Appellant fails to establish how he was prejudiced by the jury knowing that he was in jail the day after his arrest for the very crimes they are seated to hear.
 {¶ 23} Fourth, appellant complains that Ms. Berg testified that appellant could have been evicted. On redirect, the prosecutor was asking Ms. Berg if she moved out of the apartment after the incident and if she was able to get out of the lease. She stated, "the owner of the building gave me a couple of options of what I could do. One was that Christopher could get — be removed." (Tr. 105). Counsel objected to this testimony as hearsay, and the court sustained the objection. This may have been hearsay, but it is not prejudicial character evidence as appellant claims. The jury was already hearing appellant's felonious assault case; hearing that Ms. Berg may have been able to have appellant removed from their apartment so she could remain does not give rise to measurable prejudice. In fact, Ms. Berg then advised that she was the one who moved out and that appellant stayed in the apartment to fulfill the lease. (Tr. 105).
 {¶ 24} Fifth, appellant complains that any actions that caused the original disorderly conduct charge should not have been mentioned. Apparently, that night also gave rise to a misdemeanor charge of persistent disorderly conduct. However, that charge was dismissed by the county court. Before the police officer testified, defense counsel asked that the state be barred from eliciting testimony about appellant's language, behavior, or demeanor that would only be relevant to that dismissed charge rather than the current charge of assault on an officer. (Tr. 192-193). Counsel advised that he would be entering a continuing objection to any such testimony. (Tr. 193).
 {¶ 25} The state countered that the testimony was admissible because some of the profanity accompanied an admission and some of the profanity and bad behavior set the stage and background for how the assault occurred. (Tr. 195). The court agreed and advised that if the testimony is relevant or provides background to define the atmosphere of the conduct at issue, then counsel could anticipate any objections being overruled. (Tr. 196-197).
 {¶ 26} Thereafter, the officer testified that he asked appellant to stop acting disorderly in front of the female dispatcher. Defense counsel objected, and the court overruled the objection. (Tr. 214). As the court held, the testimony about appellant's behavior immediately preceding his assault on the police officer was relevant and admissible to establish how and why the assault took place and to help prove it was not an accident as appellant claimed.
 {¶ 27} Lastly, appellant contends that certain documents should not have been introduced because they were irrelevant and constituted inadmissible character evidence. Apparently, one of the reasons appellant was mad at Ms. Berg was because she typed a resume for him which contained typographical and grammatical errors. State's Exhibit Number One was a torn and crumpled manila file folder with a resume and cover letter inside. Appellant wrote on the folder, "Thanks for the shitty cover letter. Where's the rent. The pasta you cooked for your fat boyfriend 3 weeks ago was rotting in the sink, I cleaned it. Thanks for the crap. Wow."
 {¶ 28} Although character evidence of the defendant is generally inadmissible unless offered by him or by the state to rebut the same, evidence of other crimes, wrongs, or acts is admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid. R. 404(B). Here, part of appellant's motive for being upset at Ms. Berg and her boyfriend is established through State's Exhibit Number One. Regardless, any resulting prejudice from this letter would not be reversible. As such, this argument is without merit. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 29} Appellant's second assignment of error provides:
 {¶ 30} "Appellant was prejudiced by the comments concerning his silence following miranda warnings."
 {¶ 31} The officer testified to the assault he suffered and then continued:
 {¶ 32} "He was handcuffed to the bench and at that time I pulled out a Miranda form, read him his Miranda rights, asked him if he was willing to make a statement and he didn't want to do anything at that time.
 {¶ 33} "[Prosecutor] Your Honor?
 {¶ 34} "[Defense Counsel]: Your Honor, I'm going to object to that, your Honor.
 {¶ 35} "THE COURT: Object to?
 {¶ 36} "[Defense Counsel]: The testimony regarding reading him his rights and not making a statement. He had no obligation to do so.
 {¶ 37} "THE COURT: Well, overruled. Save it for argument." (Tr. 219).
 {¶ 38} The state then introduced the signed Miranda warnings as State's Exhibit Number Nine. Later, defense counsel objected to the admissibility of the exhibit, but the court overruled the objection. (Tr. 230). When appellant testified, the state asked:
 {¶ 39} "Q. Yet when they asked you if you wanted to say anything, you declined?
 {¶ 40} "A. I didn't know what to say. No, I — I said plenty.
 {¶ 41} "Q. Do you recall being read your Miranda rights?
 {¶ 42} "A. No, I don't recall that.
 {¶ 43} "Q. You don't recall that.
 {¶ 44} "A. No.
 {¶ 45} "Q. Do you recall being asked by Officer Shoaff if you'd like to give a statement?
 {¶ 46} "A. I did give a statement. I did give a statement. I told them that I what happened. I did give them a statement. I told them over — I told them repeatedly what happened on the way to the station and at the station.
 {¶ 47} "Q. Did you provide a written statement, sir?
 {¶ 48} "A. I — I believe I did. I'm not certain. There was some things going on at the time that I'm not certain at that particular time if I did or not.
 {¶ 49} "Q. So it's your testimony that you provided a written statement or may have?
 {¶ 50} "A. I may have. There was some — there was some things going between the hospital and there, I — I don't know. I told them repeatedly what had happened, though.
 {¶ 51} "Q. And you don't recall Officer Schoaff sitting down while you were handcuffed to the bench near the wall and reading you your rights?
 {¶ 52} "A. I — I — there was — again, I'm sure, I would assume that happened. I — I — looking back, I'm sure that he did, at some point. I'm not exactly sure when it was. But somewhere between, in the course of things, I'm sure that he did, yeah.
 {¶ 53} "Q. And it's your testimony that when he asked you if you wanted to give a statement, you didn't say no?
 {¶ 54} "A. No, I gave a statement." (Tr. 296-298).
 {¶ 55} Appellant argues that the above occurrences violated his right to remain silent. The United States Supreme Court has held that the state cannot use the defendant's post-arrest, post-Miranda silence as a means to impeach him if he later decides to testify at trial. Doyle v. Ohio (1976),426 U.S. 610, 618.
 {¶ 56} The state asks how appellant can argue he was prejudiced by the officer's testimony that appellant did not make a post-Miranda statement when appellant himself claimed that he did make a statement explaining his side of the story. (Tr. 297). Appellant suggests that he would not have made this claim if the state never improperly asked him the above questions in the first place.
 {¶ 57} First, we shall address appellant's argument that the officer should not have initially implied that appellant invoked his right to remain silent after being Mirandized. It has been held that "a single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." State v. Treesh (2001),90 Ohio St.3d 460, 480.
 {¶ 58} Here, the officer merely stated that appellant "didn't want to do anything at that time." The officer also advised that appellant wished to be taken to the hospital for his cuts, which was favorable to appellant in that it may have helped explain why he did not make a statement post-Miranda.
 {¶ 59} Moreover, opening statements disclosed that part of appellant's theory was that the police conducted "[n]o investigation whatsoever." (Tr. 21). Counsel stated, "I would respectfully submit to you that if the police would have taken some time and asked everybody what occurred, found out just why was Chad Paynter over there that night, you know, they might have taken a different view of this. But they jump to the conclusion, arrest him, and that's that." (Tr. 22). As such, the state was within its bounds to elicit the minimal testimony that appellant in fact was asked to tell his side of the story. See Eason,
supra. We also note that it was not ineffective assistance of counsel for the defense attorney to have initiated such a strategy.
 {¶ 60} As for the questions asked of appellant by the state on cross-examination, appellant had already opened the door to the state's questions. See State v. Eason, 7th Dist. No. 02BE41,2003-Ohio-6279 (stating that Ohio courts have agreed with the United States Supreme Court that a prosecutor may question a defendant about post-arrest silence, without a Doyle violation, if the defendant has raised the issue on direct examination). For instance, on direct examination, appellant stated that he was mean to the officers because he "was trying to explain to them the situation, that I had tried to call them and that they were arresting the wrong guy and that they would have done the same thing in my situation to defend themselves and I was just very adamant about that. * * * I was scared and trying to tell them and explain to them that they would have done the same thing in that situation." (Tr. 255). The state's questioning was merely an attempt to impeach appellant's credibility as to his claims that he repeatedly tried to explain his story. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 61} Appellant's third assignment of error contends:
 {¶ 62} "Appellant was prejudiced by the ineffective assistance of trial counsel."
 {¶ 63} As we mentioned in addressing claims of ineffective assistance under appellant's first assignment of error, there exist a wide range of professional competence and appropriate trial tactics. The appellate court is deferential to this diverse range of tactics and does not use hindsight to judge instances of trial strategy that backfire. State v. Carter (1995),72 Ohio St.3d 545, 558. Ineffective assistance of counsel requires the defendant to establish deficient performance which caused such a serious error that the defense was prejudiced in such a way that there exists a reasonable probability that but for the error, the outcome of the trial would have been different. Strickland v.Washington (1984), 466 U.S. 668, 687-689; State v. Bradley
(1989), 42 Ohio St.3d 136, 142.
 {¶ 64} Besides the allegations of ineffective assistance appellant mentioned in the above assignments of error, he sets forth five other allegations within this assignment, which shall be called subassignments. Some of these subassignments contain multiple allegations.
 {¶ 65} In his first subassignment, appellant states that counsel should have asked that the charges be severed. He notes that if the charges had been severed, then the felonious assault jury would not have been entitled to hear about his raucous behavior after arrest. He notes that joinder often allows the state to circumvent the prohibition on other acts evidence.
 {¶ 66} Crim. R. 14 provides that if it appears prejudice will result from joinder, the court shall order election or separate trials, grant severance, or other relief. The Supreme Court has stated that in determining whether the defendant suffered prejudice from joinder, the reviewing court must ask: whether evidence of the other crime would have been admissible even if severed, and if not, whether evidence of each is so simple and distinct that the jury could clearly segregate the evidence.State v. Schaim (1992), 65 Ohio St.3d 51, 59, 62, citing Statev. Hamblin (1988), 37 Ohio St.3d 153, 158-159 and State v.Roberts (1980), 62 Ohio St.2d 170.
 {¶ 67} Here, many of the events that occurred post-arrest that were relevant to the assault on an officer trial would not have been admissible in the felonious assault trial. (Although, as the state notes, appellant's admission in the police car that he should have killed Mr. Paynter would have been admissible.) Still, the evidence of each crime was so simple and distinct that the jury could easily segregate the evidence. See Schaim,65 Ohio St.3d at 62. Hence, under the Schaim test, appellant has not shown prejudice by joinder. As such, he cannot demonstrate ineffective assistance of trial counsel for failing to move to sever the counts. Moreover, refusal to seek severance may have been a strategic move as counsel may have hoped that the lesser assault charge would give the jury a way to acquit him of the felonious assault but still convict him of something; counsel may have believed this to be preferable over an all-or-nothing scenario on each crime tried separately. This argument is overruled.
 {¶ 68} In his second subassignment, appellant complains that counsel failed to seek jury instructions or motions to strike regarding five items. First, he states that counsel should have asked for instructions stating that his post-Miranda silence cannot be used against him. As aforementioned, counsel did lodge an objection to the officer's testimony, and the court overruled the objection. Moreover, appellant denied that he invoked his right to remain silent. See assignment of error number two. This argument is overruled.
 {¶ 69} Second, appellant contends that counsel should have asked the court to instruct that evidence of the assault on an officer charge should not be used to convict him of felonious assault. The jury was given the elements of each offense, and they found these respective elements satisfied. This argument is overruled as prejudice is not apparent.
 {¶ 70} Third, appellant complains that counsel did not ask for a jury instruction defining deadly force and explaining self-defense not involving deadly force. Appellant apparently realized that a jury may not believe that he was confronted with danger of death or great bodily harm, which is required in order to use deadly force in self-defense. However, appellant's argument (that pointing a knife at someone while making fatal threats is not "deadly force") is not so clear cut that counsel was absolutely required to seek an instruction on non-deadly force self-defense, especially where two witnesses testified that appellant tried to stab Mr. Paynter in the abdomen and the 911 call reveals appellant threatening to cut or gut Mr. Paynter like a fish.
 {¶ 71} Fourth, appellant argues that when the state asked for an instruction on aggravated assault, his attorney should have asked for an instruction on the lesser included offense of simple assault. As the state responds, defense counsel did ask for an instruction on simple assault. (Tr. 306-307). Thus, appellant's ineffective assistance of counsel argument is misplaced.
 {¶ 72} Fifth, appellant argues that counsel should have filed an immediate motion to strike and for jury instructions to disregard the fact that appellant was convicted of driving under the influence. As the state points out, it was appellant who disclosed this fact. (Tr. 242). He apparently wished to prove that he lived intimately with Ms. Berg as he was stuck in a one bedroom apartment with her while on house arrest; in order to say this, he would be opening the door as to why he was on house arrest; as such, a reasonable strategy would be to disclose it before asked by the state. For all of the foregoing reasons, appellant's second subassignment alleging ineffective assistance of counsel for failing to ask for certain instructions is overruled.
 {¶ 73} In his third subassignment, appellant alleges that defense counsel was ineffective for failing to file a motion to suppress. He claims that the arrest was not based upon probable cause and that the statement he made in the cruiser was made without the benefit of Miranda warnings. As the state proffers, counsel was not required to file a motion to suppress that would not have succeeded. Statements by two witnesses that appellant attacked Mr. Paynter with a knife, among other evidence, would give sufficient probable cause for arrest. Further, the statement made in the cruiser was a voluntary admission that appellant blurted out without prompting. Thus, it was not the product of custodial interrogation and is admissible even in the absence of prior Miranda warnings. Miranda v. Arizona (1966),384 U.S. 436, 478. As such, this subassignment is overruled.
 {¶ 74} In his fourth subassignment of error, appellant complains that counsel failed to subpoena Ms. Berg's work records. He believes this is important because Ms. Berg was confused as to whether the incident occurred on a Friday or a Saturday night. As the state points out, much of the confusion may have revolved around the fact that this occurred just after midnight. Additionally, the police department records and the police officer's testimony established the night the incident occurred.
 {¶ 75} Yet, appellant also suggests that the work records may have helped not just to establish the date but to diminish her credibility as to why she came to the apartment that night. She testified that she went to the apartment to get work clothes since she worked the next day (which she described as a Saturday). Counsel could have just as easily asked her if she worked on Sunday. To subpoena the work records in the middle of trial could be more work than it was worth. There is no indication that Ms. Berg did not work the next day. As such, prejudice has not been established.
 {¶ 76} Finally, appellant's fifth and final subassignment dealing with ineffective assistance of counsel merely states, "Trial counsel failed to make a Crim. R. 29 Motion for Acquittal at the end of all evidence, and only made a partial motion as to Count One after the State rested." Counsel has no duty to make fruitless motions. A motion for acquittal deals with sufficiency of the evidence and the test is thus whether the state set forth adequate evidence so that a reasonable person could find the elements proven beyond a reasonable doubt. State v. Getsy
(1998), 84 Ohio St.3d 180, 193; State v. Goff (1998),82 Ohio St.3d 123, 138, 694; State v. Dennis (1997), 79 Ohio St.3d 421,430. Counsel moved for an acquittal on count one after the state rested. The court denied the motion. Failing to renew that motion is not ineffective in this case because there is no prejudice since the evidence was clearly sufficient. See assignment of error number seven for discussion of sufficiency of the evidence.
 {¶ 77} As to count two, whether appellant knowingly kicked the officer or whether he lost his balance and accidentally kicked him is a credibility issue, on which a court is surely unlikely to grant acquittal. Therefore, counsel could properly refrain from seeking an acquittal motion. This subassignment is without merit, and appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 78} Appellant's fourth assignment of error alleges:
 {¶ 79} "Appellant was prejudiced by the state's use of leading questions, hearsay and non-expert witnesses as experts."
 {¶ 80} The three arguments set forth under this assignment of error deal with evidentiary issues. First, appellant alleges that the prosecutor improperly used leading questions to guide Ms. Berg and Mr. Paynter to the desired responses during their testimony. He cites to pages 98-103, 107, 110, 173-180 and 185 of the transcript in support of his claims.
 {¶ 81} Firstly, appellant failed to object to the allegedly leading questions used in the re-direct examination of Ms. Berg. (Tr. 98-103, 107, 110). Thus, he waived any arguments for purposes of appeal. Evid. R. 103(A)(1). State v. Delgros (1995),104 Ohio App.3d 531, 538 (specifically applying the evidentiary doctrine to these types of facts). Ineffective assistance of counsel cannot be predicated on this argument as the failure to object can be considered acceptable trial strategy in this case.Delgros, 104 Ohio App.3d at 539. Plain error is not apparent as there are no exceptional circumstances. Most importantly, appellant's argument regarding Ms. Berg's re-direct would fail on its merits as we explain in the following analysis on the allegedly leading questions asked of Mr. Paynter and to which appellant objected.
 {¶ 82} Starting at page 173, the prosecution conducted re-direct examination of Mr. Paynter using questions that reviewed the prior testimony and asking the witness if the review is a correct summary. When the state asked, "In other words, she'd pick up the clothes she needed for the nights she was going to be there," defense counsel objected and argued that the prosecutor was testifying. (Tr. 174-175). The court overruled the objection. (Tr. 175).
 {¶ 83} Thereafter, the state asked, "You also testified that he — Mr. Stragisher couldn't have stabbed you. And is it my understanding that's because you were successfully defending yourself?" Defense counsel objected to this as leading. (Tr. 179). The court agreed that it was a bit leading and sustained the objection. (Tr. 179-180).
 {¶ 84} Finally on a second re-direct of Mr. Paynter, the state declared, "As I recall, Mr. Paynter, during your testimony on cross with [defense counsel], you indicated that when you saw the knife the anger left you and you went into survival mode?" Defense counsel objected arguing, "He didn't say that." The objection was overruled. (Tr. 185).
 {¶ 85} Evid. R. 611(C) provides as follows:
 {¶ 86} "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
 {¶ 87} The Staff Note to this rule then explains that provisions of the rule do "not foreclose the use of leading questions based on other considerations. Those include surprise, refreshing recollection after memory is exhausted, the handicaps of age, illness, or limited intellect, and preliminary matters."
 {¶ 88} Thus, even on direct examination, leading questions are not strictly prohibited. The portion of the rule allowing leading questions to develop testimony is very broad. The trial court has latitude to exercise sound discretion in determining whether to allow leading questions on direct examination. See e.g., State v. Smith (1997), 80 Ohio St.3d 89, 110, citingState v. D'Ambrosia (1993), 67 Ohio St.3d 185, 190; Ramage v.Central Ohio Emer. Serv., Inc. (1992), 64 Ohio St.3d 97, 111.
 {¶ 89} As the state notes, the portions of the record cited in appellant's brief all take place during re-direct of the state's witnesses. It has been stated that if the prosecutor already elicited the evidence from the witness on direct examination without the use of leading questions or the defendant elicited the evidence on cross-examination, then the use of leading questions to review the testimony on re-direct is permissible. See City of Columbus v. Lipsey (Mar. 12, 1991), 10th Dist. Nos. 90AP-543, 544. Moreover, the Supreme Court has advised that it is not improper leading to direct one's attention to events or to matters on which testimony was already generated.D'Ambrosia, 67 Ohio St.3d at 190.
 {¶ 90} Here, the prosecutor was just reviewing prior testimony and summing it up for quick reconfirmation. The trial court used its discretion and allowed various instances of allegedly leading questions on re-direct and in fact, used its discretion to sustain one of defense counsel's objections. We find no abuse of discretion.
 {¶ 91} Next, appellant cites page 206 of the transcript and complains in one sentence, "Hearsay was introduced, then later the objection was sustained after the jury heard the hearsay." Initially, we should note that appellant's argument is seriously lacking in form and substance. See App. R. 16(A)(7).
 {¶ 92} This argument relates to the state's questioning the officer on his understanding of what occurred based upon his interviews with Mr. Paynter and Ms. Berg. Before the officer responded, defense counsel objected. The court overruled the objection, and the officer testified that Ms. Berg stated that she went to her apartment with her boyfriend in order to get some clothes. He also testified that Ms. Berg told him appellant left her some telephone messages that she felt were threatening, which is why she wanted to get some clothes and leave the apartment. When defense counsel objected again, the court sustained his objection and motion to strike. (Tr. 206).
 {¶ 93} Although his objection was sustained, appellant urges he was prejudiced by the officer's revelations. As the state responds, Ms. Berg and Mr. Paynter had already testified as to this version of events. Thus, appellant has not established that his defense was prejudiced by the officer's disputed testimony.
 {¶ 94} Lastly, appellant argues that the police officer should not have been permitted to testify that Mr. Paynter's wounds were consistent with the explanation given, citing to page 207 and 211 of the transcript. He notes that the officer later admitted that he was not an expert when defense counsel tried to get him to admit that the wounds could also have been caused by other means, citing page 222 of the transcript. Appellant concludes that a non-expert gave expert testimony.
 {¶ 95} As to the first instance where the officer answered affirmatively to the state's question as to whether "the explanation was consistent with the physical findings with regard to the knife and the injuries to those parties," defense counsel lodged no objection. Thus, this argument has been waived. Plain error is not apparent, and it is not ineffective assistance for counsel to avoid splitting hairs.
 {¶ 96} Shortly thereafter, the officer was identifying a photograph depicting a scratch on Mr. Paynter's face. The state asked, "That would be consistent with the explanation that he provided?" The officer responded affirmatively, and defense counsel objected stating, "I don't know if the officer's qualified to make that assessment." The court overruled the objection. (Tr. 211).
 {¶ 97} Whether a cut seems consistent with a story does not absolutely require expert medical testimony as appellant suggests. One who heard a story can opine whether the cuts are in the places advised during the story. As appellant himself points out, his counsel asked the officer if the mark on Mr. Paynter's face could also be consistent with a fingernail scratch. The officer conceded, "Could have been. I'm not an expert on that." Defense counsel then responded, "So you're not in a position to say for sure beyond a reasonable doubt that that mark on his face was caused by a knife?" The officer agreed that he was not. As such, prejudice is not apparent. This assignment of error is hereby overruled.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 98} Appellant's fifth assignment of error provides:
 {¶ 99} "The trial court erred in sentencing appellant to three (3) years on count one and one (1) year on count two, to be served consecutively."
 {¶ 100} Appellant argues that although there is a presumption of a prison term for the felonious assault, community control was still appropriate. The court found on the record that appellant was not amenable to community control based upon his background and the circumstances of the case. (Tr. 51). The court noted appellant's poor traffic record. (Tr. 47). The state had previously advised that appellant had five convictions for driving under the influence. The state also disclosed other convictions such as, criminal mischief, obstructing official business, resisting arrest, and two disorderly conducts. (Tr. 6). The court also opined that appellant has substance abuse problems and anger management problems. The court noted that appellant's participation in therapy has been inconsistent. (Tr. 47).
 {¶ 101} The court pointed out that appellant made at least one threatening phone call to Mr. Paynter after the conviction. The court also stated that the reportmakers were misled into thinking that the presentence investigation was for a plea bargain rather than for sentencing after conviction. The court noted appellant's intelligence and the fact that he has a college degree and had a worthy job helping mentally disabled individuals. (Tr. 48). However, the court concluded that appellant was "a menace" and "a danger" and that something more substantial than community control was required. (Tr. 48-49).
 {¶ 102} As aforementioned, there is a presumption in favor of imprisonment on the felonious assault, a second degree felony. See R.C. 2929.13(D). The court can only find that this presumption is rebutted if it finds both of the following:
 {¶ 103} "(1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
 {¶ 104} "(2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense."
 {¶ 105} The court did not make either of the following findings and under the circumstances herein was not required to make these findings. The court, although not required to do so, listed multiple reasons to support these findings. For the above reasons, the trial court properly refused to grant community control for the felonious assault conviction.
 {¶ 106} Besides the aforementioned statements by the court in general, the court made some observations more specific to the assault charge. For instance, the court noted the importance of respect for law enforcement officers and that, although the offense was only a felony of the fourth degree, appellant caused physical harm. (Tr. 47, 51). See R.C. 2929.13(B)(1)(a). The court concluded that appellant was not amenable to community control and the purposes and principles of sentencing were consistent with a prison term. (Tr. 51). See R.C. 2929.13(B)(2)(a). Due to all of the foregoing, the court could properly refuse to impose community control for the assault on a police officer conviction.
 {¶ 107} Appellant next argues that at most, minimum and concurrent sentences should have been entered. The minimum sentence for a second degree felony such as felonious assault is two years, and the minimum sentence for a fourth degree felony such as assault is six months. R.C. 2929.14(A)(2) and (4). The court can deviate from a minimum sentence where the offender previously served prison time or the court finds on the record that a minimum sentence would demean the seriousness of the offender's conduct or would not adequately protect the public. R.C. 2929.14(B). Only findings, not reasons, are required to be made at the sentencing hearing in order to deviate from the minimum. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26; State v. Edmonson (1999), 86 Ohio St.3d 324, 326.
 {¶ 108} Here, the court made both alternative findings at the sentencing hearing. (Tr. 50). Considering the above reviewed circumstances and background, these findings are not clearly and convincingly contrary to law or unsupported by the record. As such, the court could properly deviate from the minimum sentences in this case.
 {¶ 109} Lastly, appellant insists that consecutive sentences are unwarranted in this case. Both findings and reasons are required to be made at the sentencing hearing in order to impose consecutive sentences. R.C. 2929.19(B)(2)(c) (the court shall make the requisite findings and give reasons for imposing consecutive sentences). See, also, Comer at ¶ 20. The findings required for imposing consecutive sentences are set forth in R.C. 2929.14(E)(4) as follows:
 {¶ 110} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 111} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
 {¶ 112} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 113} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 114} At the sentencing hearing, the court made the findings required by the first paragraph of R.C. 2929.14(E)(4). (Tr. 50). The court then chose the finding in R.C. 292914(E)(4)(b) and stated, "the harm here is so great or unusual that no single prison term for any one of these offenses committed as part of this course of conduct would adequately reflect the seriousness of the conduct in which you engaged." (Tr. 50-51).
 {¶ 115} In explaining its reasoning for imposing consecutive sentences, the court noted that appellant had a bothersome past background, including a disorderly conduct conviction, a poor traffic record, a substance abuse problem, and anger management problems. The court advised that appellant has not consistently attempted counseling. (Tr. 47). The court made note of appellant's subsequent threatening phone calls that expose his propensity toward violence. (Tr. 48). The court described appellant as a menace and danger from whom the public needs protected. (Tr. 48). We cannot say that the court failed to give adequate reasons for imposing consecutive sentences in this case. In accordance, this argument and this assignment of error are overruled.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 116} Appellant's sixth assignment of error contends:
 {¶ 117} "The trial court failed to give proper jury instructions."
 {¶ 118} Under this assignment, appellant sets forth approximately six allegations regarding the court's failure to give certain jury instructions. Appellant makes no cite to the transcript evidencing that such instructions were requested. Thus, as the state urges, this assignment of error can only be reviewed for plain error. As previously stated, the plain error doctrine is a discretionary doctrine to be used by the appellate court only in exceptional circumstance to avoid a manifest miscarriage of justice. State v. Hughbanks, 99 Ohio St.3d 365,2003-Ohio-4121, at ¶ 39.
 {¶ 119} Appellant also raised these arguments in the second subassignment under his third assignment of error dealing with ineffective assistance of counsel. We shall briefly review the arguments here as well.
 {¶ 120} First, appellant contends that the court should have instructed the jury that his silence after he was Mirandized should not be used against him. We already analyzed how this topic was raised by appellant, how appellant claimed that he was not silent, and how he was not prejudiced by this trial tactic.
 {¶ 121} Second, appellant claims that the trial court should have instructed the jury that each count should be deliberated separately and that the jury should not let the evidence on one charge influence its decision on another. The jury was given the elements of each offense separately and distinctly. The jury found the elements for each offense independently. Such instruction was not a necessity.
 {¶ 122} Third, appellant believes the court was required to instruct that a prior conviction cannot be used against him. As mentioned earlier, he is the one who disclosed that he had been convicted for driving under the influence. Although Ms. Berg mentioned he had been in jail, this is not evidence of a prior conviction. It may be other acts evidence; however, it came to light only on cross-examination when defense counsel's trial strategy (of trying to establish Ms. Berg lived with appellant in a one-bedroom apartment) backfired. Plain error is not apparent.
 {¶ 123} Fourth, appellant claims the court should have defined deadly force and instructed on self-defense with non-deadly force. As analyzed under the third assignment of error appellant's argument (that pointing a knife at someone while yelling at them and approaching them is not "deadly force") is not so clear cut that the trial court should have taken it upon itself to instruct on self-defense with non-deadly force, especially where two witnesses testified that appellant tried to stab Mr. Paynter in the abdomen and the 911 call establishes appellant threatening to cut or gut Mr. Paynter like a fish. Plain error is not apparent.
 {¶ 124} Fifth, appellant complains that the court failed to advise the jury that Mr. Paynter was trespassing if he reentered after being told to leave. It was undisputed that Ms. Berg also lived in the apartment and that Mr. Paynter was her guest. Defense counsel did not request a trespassing instruction; he may have strategically concluded the jury would inevitably conclude that Mr. Paynter was not trespassing and that the most stream-lined charge would be the best tactic. The trial court was not required to sua sponte give such an instruction.
 {¶ 125} Lastly, appellant complains that the trial court failed to instruct on aggravated assault. This offense is similar to felonious assault but includes the mitigating factor of serious provocation by the victim. As the state explains, the prosecutor was the one who asked for the instruction in order to have an option to counter appellant's defense of self-defense. In fact, defense counsel specifically and repeatedly advised that he did not believe aggravated assault was applicable herein. (Tr. 311). As such, it cannot be plain error for the court to refuse the state's request to instruct on aggravated assault. Even if the charge were applicable, defense counsel's strategy may very well have been that of all-or-nothing. As such, we find no application for the discretionary doctrine of plain error here, and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 126} Appellant's seventh assignment of error alleges:
 {¶ 127} "The evidence was insufficient as a matter of law, as to both counts."
 {¶ 128} Under this assignment, appellant states that even if the jury did not believe his self-defense theory, the most he was guilty of regarding Mr. Paynter was aggravated assault. As to count two, appellant claims that the evidence does not establish a real intent to harm the police officer and that the evidence only supports a charge of resisting arrest or disorderly conduct.
 {¶ 129} Sufficiency of the evidence deals with adequacy rather than weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court holds that after viewing the evidence in the light mostfavorable to the prosecution, no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. Goff, 82 Ohio St.3d at 138.
 {¶ 130} The elements of the felonious assault charge are: knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). The elements of the assault on a police officer charge are: knowingly causing or attempting to cause physical harm to a police officer in the performance of his official duties. R.C. 2903.13(A).
 {¶ 131} Here, the evidence was sufficient to support both crimes. As for felonious assault, there is no dispute that appellant had a deadly weapon pointed at Mr. Paynter. Some evidence established that he not only tried to stab Mr. Paynter in the abdomen but also that he caused some physical harm with the knife to Mr. Paynter's hands. Moreover, as the court instructed, inferences regarding intent are permissible.
 {¶ 132} For instance, as to the assault on an officer charge, one could rationally agree with the officer's view of appellant's action in kicking him as being intentional rather than accidental. Physical harm to the officer was also established.
 {¶ 133} In conclusion, the state presented testimony on each element of each offense. Viewing that testimony in the light most favorable to the state, some rational person could conclude that the elements were proven beyond a reasonable doubt. As the state points out, the real issue before the jury was that of credibility or weight of the evidence, rather than sufficiency of the evidence. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER EIGHT {¶ 134} Appellant's eighth and final assignment of error argues:
 {¶ 135} "The cumulative effect of errors deprived appellant of his right to a fair trial under both the united states and ohio constitutions, as confidence in the result being just verdicts was necessairly undermined."
 {¶ 136} Under the doctrine of cumulative error, a conviction can be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. State v. Garner (1995), 74 Ohio St.3d 49,64. This doctrine is inapplicable when the defendant fails to establish multiple instances of harmless error. Id. As we have stated, if the defendant did not object to the alleged errors, he is also faced with the discretionary hurdle of the plain error doctrine. State v. Hess, 7th Dist. No. 02JE36, 2004-Ohio-1197, citing State v. Issa (2001), 93 Ohio St.3d 49, 56.
 {¶ 137} Here, appellant failed to object to many of the alleged instances of error. The lack of objection in many instances was the result of trial strategy and was not plain error. Even if appellant had established the existence of various harmless errors, there is no right to a perfect trial and there is no cumulative effect that could have deprived appellant of his right to a fair trial. This assignment of error is overruled.
 {¶ 138} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., concurs.