DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Franklin T. Varney, appeals the decision of the Hocking County Court of Common Pleas convicting him on one count of obstruction of justice and two counts of receiving stolen property. Appellant contends there was error in that: 1) he was provided *Page 2 
ineffective assistance because his trial counsel failed to object to the joinder of the obstruction of justice charge and the receiving stolen property charges; 2) the trial court committed plain error by failing to sever the obstruction of justice charge from the receiving stolen property charges; 3) his convictions for receiving stolen property were against the manifest weight of the evidence, and; 4) his conviction for obstruction of justice was against the manifest weight of the evidence.
 {¶ 2} After reviewing the record below, we find none of Appellant's assignments of error are warranted. Because the evidence presented by the State was straight forward and direct, there was no likelihood of the jury confusing the obstruction of justice charge with the receiving stolen property charges. As such, joinder of the offenses was not prejudicial. Thus, Appellant's first two assignments of error are overruled. As to his third and fourth assignments of error, after reviewing the record below, we are unable to say the jury clearly lost its way and created a manifest miscarriage of justice in finding Appellant guilty of receiving stolen property and obstruction of justice. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court. *Page 3 
 I. Facts {¶ 3} Prior to the events in question, Appellant had been convicted of vandalism and placed on community control. During the course of a separate investigation, law enforcement became aware of the possibility that Appellant had violated the terms of his community control. Police officers, including Detective Kevin Groves, went to Appellant's residence to further investigate the information. While there, the police were allowed to search the home at which time they noted that Appellant had numerous all terrain vehicles (ATVs) in his garage. Officers recorded the vehicle identification numbers of some of these vehicles and left the residence.
 {¶ 4} Subsequently, Detective Groves interviewed a number of witnesses who had information about activities occurring at Appellant's residence. These witnesses included Josh Varney, Appellant's son, and Josh's girlfriend, Samantha Nelson. The witnesses told Groves that Appellant knowingly allowed his brother-in-law, Timothy Stafford, to live on his property. This, despite the fact that Appellant knew Stafford was a fugitive and that there were numerous warrants out for his arrest. In fact, the witnesses stated that Appellant took steps to actively concealed Stafford's presence from law enforcement. In addition to the information concerning Stafford, checking the ATV vehicle identification numbers showed that one *Page 4 
of them had previously been reported as stolen. As a result of this information, the police obtained a search warrant and returned to Appellant's property.
 {¶ 5} Upon executing the warrant, police found Timothy Stafford in a mobile home on Appellant's property situated 700 to 800 feet behind Appellant's residence. Police impounded the all terrain vehicles and arrested Appellant, Appellant's wife, and Stafford. It was subsequently learned that another of the ATVs in Appellant's possession was also stolen.
 {¶ 6} Appellant was charged with two counts of receiving stolen property and one count of obstruction of justice for harboring Stafford. The case proceeded to trial and the jury found Appellant guilty of all three offenses. Appellant then timely filed the current appeal.
 II. Assignments of Error {¶ 7} 1. [TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO REQUEST THAT THE RECEIVING-STOLEN-PROPERTY CHARGES BE SEVERED FROM THE OBSTRUCTING-JUSTICE CHARGE.
 {¶ 8} 2. [THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED MR. VARNEY'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT *Page 5 
FAILED TO SEVER THE RECEIVING-STOLEN-PROPERTY CHARGES FROM THE OBSTRUCTING-JUSTICE CHARGE.
 {¶ 9} 3. [THE TRIAL COURT VIOLATED MR. VARNEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED JUDGMENTS OF CONVICTION FOR RECEIVING STOLEN PROPERTY, WHICH WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 10} 4. [THE TRIAL COURT VIOLATED MR. VARNEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR OBSTRUCTING JUSTICE, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 III. First and Second Assignments of Error {¶ 11} The basis of both Appellant's first and second assignments of error is that joinder of the offenses for receiving stolen property and for obstruction of justice was prejudicial. His first assignment of error is that his trial counsel was ineffective in failing to request the severance of his offenses. His second assignment of error is that, though his trial counsel failed to object to joinder, the trial court should have, sua sponte, severed the charges and conducted separate trials.
 {¶ 12} Ohio's Criminal Rules provide for joinder of offenses in CrimR. 8(A): "Two or more offenses may be charged in the same *Page 6 
indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." The law favors joinder of offenses and its application is liberally permitted because a single trial conserves resources and minimizes potentially incongruous results which may occur from successive trials held before different juries.State v. Schiebel (1990), 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54;State v. Schaim, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661.
 {¶ 13} However, joinder of offenses is not always appropriate and separate trials may be necessary to prevent prejudice. CrimR. 14 states, in pertinent part: "If it appears that a defendant or the state is prejudiced by * * * such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 14} "To effectively claim error in the joinder of multiple counts in a single trial, appellant must make an affirmative showing that his rights were prejudiced." State v. Barstow, 4th Dist. No. 02CA27, 2003-Ohio-7336, *Page 7 
at ¶ 54. After an affirmative showing by the appellant, the State can negate the allegation of prejudice in two ways. The first method is the "other acts" test. Under this test, "* * * the state must exhibit that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the `other acts' portion of Evid. R. 404(B)." Id. at ¶ 54. The second method is the "joinder test." Under the joinder test, "* * * the state is not required to meet the stricter `other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct." State v. Sadler, 9th Dist. No. 23256, 2006-Ohio-6910, at ¶ 6, citing State v. Roberts (1980), 62 Ohio St.2d 170, 175,16 O.O.3d 201, 405 N.E.2d 247. "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as `other acts' under Evid. R. 404(B)."Sadler at ¶ 6.
 {¶ 15} After reviewing the record in the case at bar, we find that Appellant's allegation of prejudice has been negated by the State under the "joinder" test. Despite Appellant's assertions to the contrary, the evidence produced for both his receiving stolen property offenses and his obstruction of justice offense was simple and direct. The evidence the prosecution used to demonstrate receiving stolen property was clearly distinct from that used *Page 8 
to demonstrate obstruction of justice and the jury was easily able to segregate the facts that constituted each crime.
 {¶ 16} To establish the obstruction of justice charge, the prosecution's most potent evidence was the testimony of Samantha Nelson. Nelson testified that, to her direct knowledge, Appellant harbored his brother-in-law, Tim Stafford, and allowed him to live in a trailer on Appellant's property. She further testified that Appellant was aware of the charges against Stafford and Appellant actively took steps to conceal his presence.
 {¶ 17} To establish the receiving stolen property charges, the prosecution primarily relied upon the testimony of Richard Fox and the fact that Appellant had the stolen ATVs in his possession. Fox testified that though he never owned, possessed or even saw the two ATVs in question, Appellant asked him to provide false receipts for each as if Fox had sold them to him. Fox agreed to do so, partly in consideration of a lawn mower Appellant gave to him. Though Fox's testimony at trial differed from previous accounts that he had given, he stated his reasons for changing his testimony and the jury was able to evaluate his credibility. Other evidence, such as irregularity in the receipts which Appellant provided to law enforcement, and other witness testimony, corroborated Fox's account. *Page 9 
 {¶ 18} The evidence adduced as to obstruction of justice and receiving stolen property was separate and distinct, as was the witness testimony concerning each. Though Detective Kevin Groves testified as to both offenses, the evidence was such that the jury could easily segregate the two counts. The purpose of the "joinder test" is to prevent the finder of fact from confusing the offenses. Here, because the evidence was straightforward, there was little or no danger the jury would confuse the evidence or improperly consider testimony on one offense as corroborative of the other. As such, Appellant was not prejudiced by the joinder of his obstruction of justice offense to his receiving stolen property offenses. Thus, Appellant's first and second assignments of error are overruled.
 IV. Third Assignment of Error {¶ 19} In his third assignment of error, Appellant contends his convictions for receiving stolen property were against the manifest weight of the evidence. Initially, we state the appropriate standard of review.
 {¶ 20} When reviewing such claims, appellate courts should weigh the evidence and all reasonable inferences and also consider witness testimony. State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814. The reviewing court sits, essentially, as a "thirteenth juror" and may disagree with the fact finder's conclusions regarding conflicting *Page 10 
testimony during trial. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541 "However, this review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact." Garrow at 371. A reviewing court should only reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins at 387.
 {¶ 21} As previously stated, to establish the receiving stolen property charges, the primary evidence the State adduced was the testimony of Richard Fox and the fact that the two stolen ATVs were in Appellant's possession. Fox testified at trial that he never sold the ATVs in question to Appellant nor had he ever seen them. He testified that he agreed to help create false receipts for the vehicles because Appellant had a lawn mower that he wanted: "[Appellant] said if I do him a favor, he would give me the riding mower and asked for a favor. He said he got a couple four wheelers off of someone, he can't get a receipt for and needed a receipt for a bill of sale receipt for four wheelers so he could get a tag or sticker to ride it in public * * *. He came to my home with information for the four wheelers so I could write receipts for him. I never saw the four wheelers. I wrote them, give him as he had asked me to. * * * I met with Mr. Groves about the *Page 11 
Varney case. I also lied to Detective Groves saying I sold and traded four wheelers to Mr. Varney because I was scared of the Varney family and getting in trouble myself for lying for writing statements I wrote. I never owned, stole or seen the four wheelers, but Mr. Varney asked for the receipts."
 {¶ 22} Appellant argues that questions about Fox's credibility, when he admitted to previously perjuring himself regarding the events in question, makes the conviction for receiving stolen property against the manifest weight of the evidence. Fox testified that, in the end, he just wanted to come clean. "I just don't want to get in trouble for the statements I made to Mr. Groves and the receipts that I had written for that riding mower." The jury was able to observe Fox's demeanor and evaluate his credibility in light of his testimony. Because the weight of the evidence and the credibility of witnesses are primarily for the trier of fact, we are unable to say that reliance on such testimony was against the manifest weight of the evidence.
 {¶ 23} Additionally, other evidence corroborated Fox's testimony that Appellant knowingly provided false receipts. Detective Grove stated that, from the outset, Appellant's statements concerning the receipts made him suspicious. He testified that some of the receipts contained conflicting information and had stated dollar amounts which made him question their *Page 12 
validity. Further, the manner in which they were produced made him doubtful. "Well, the previous night they gave me two separate different receipts for how they obtained that so this receipt was new information that they tried — they produced the next day." "It appeared they were just trying to produce receipts." The jury also heard the testimony of another witness, Buffy Robbins, who stated Fox had never owned nor possessed any ATVs. Robbins also contradicted Appellant's account of the meeting between Appellant and Fox when they discussed the transaction. Appellant testified that Fox and Robbins drove up on an ATV. Robbins stated that she has never ridden on an ATV in her life.
 {¶ 24} In light of the foregoing, the jury could have reasonably found that the State established the elements necessary to convict Appellant for receiving stolen property. Nothing in the record below indicates the jury clearly lost its way and created a manifest miscarriage of justice requiring a reversal of Appellant's convictions. Because we are unable to say the jury's verdict was against the manifest weight of the evidence, Appellant's third assignment of error is overruled. *Page 13 
 V. Fourth Assignment of Error {¶ 25} As his fourth and final assignment of error, Appellant contends his conviction for obstruction of justice was also against the manifest weight of the evidence. For the following reasons, we disagree.
 {¶ 26} At the time of the events in question, Timothy Stafford, Appellant's brother-in-law, was under indictment for a number of felonies. When law enforcement officers executed the search warrant at Appellant's property, Stafford was found residing in a mobile home in a wooded area located approximately 700 feet behind Appellant's residence. As a result, Appellant was charged with obstruction of justice for harboring Stafford. Appellant contends that, even if Stafford was residing on the property, Appellant was unaware that he was doing so.
 {¶ 27} The State's primary evidence to establish this offense was the testimony of Samantha Nelson, a previous girlfriend of Appellant's son Josh and the mother of Appellant's grandchild. Nelson lived in Appellant's residence on various occasions, though she was not doing so at the time the search warrant was executed. Nelson testified that Stafford was living on the property with Appellant's full knowledge and consent. "[Stafford] would visit everybody a couple times a day * * *." Further, Nelson testified that Appellant knew about the outstanding warrants on Stafford: *Page 14 
Q: "* * * [D]id they know exactly — did they say exactly what it was — did they know why he was being charged?"
A: "Yeah. That wasn't a secret. I mean out there with everybody who lived out there, everybody knew."
 {¶ 28} Additionally, Nelson testified that Appellant took active measures to conceal Stafford's presence from law enforcement. For example, she stated that Appellant drove Stafford to cash checks, but they would take back roads and drive a considerable distance in order to avoid police. She also stated that Appellant put up a gate to restrict access to the mobile home where Stafford resided. "They pretty much kept him hid from the law and stuff."
 {¶ 29} In addition to Nelson's testimony, the jury heard evidence that indicated Stafford had been living on the property for some time. The mobile home had electricity, phone service, a refrigerator and food; there was even evidence Stafford was receiving mail. Rebutting Appellant's claim of lack of knowledge of Stafford's whereabouts, caller ID. evidence showed that phone calls originating from Appellant's residence had been placed to Stafford's mobile home on the day the search warrant was executed. Further, Detective Groves stated that witness information concerning Stafford's presence was consistent with what was found at the scene. This included the information that Stafford drove around Appellant's *Page 15 
property using a specific make of lawnmower. That specific type of lawn mower was found outside the mobile home in which Stafford was residing.
 {¶ 30} Appellant's primary argument in asserting this assignment of error is that Samantha Nelson was not a credible witness. However, in light of the testimony provided by multiple direct witnesses and by law enforcement officers, and keeping in mind that witness credibility is primarily for the trier of fact, we are unable to say the jury clearly lost its way and created a miscarriage of justice in finding Appellant guilty of obstruction of justice for harboring Stafford. Accordingly, the verdict was not against the manifest weight of the evidence and Appellant's final assignment of error is overruled.
 VI. Conclusion {¶ 31} In our view, Appellant is unable to establish any of his assignments of error. His first and second assignments of error fail because the evidence produced by the State was straight forward and direct. Accordingly, he was not prejudiced by joinder of his multiple offenses. Further, the State produced ample evidence for a jury to decide that each of the elements for receiving stolen property and obstruction of justice were satisfied. As such, Appellant's third and fourth assignments of error fail because he is unable to demonstrate that the jury's verdicts were against the *Page 16 
manifest weight of the evidence. Appellant's assignments of error are overruled and the decision of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions. *Page 17 
 Abele, P.J. and Kline, J.: Concur in Judgment and Opinion. *Page 1